```
IN THE UNITED STATES DISTRICT COURT FOR THE
             EASTERN DISTRICT OF OKLAHOMA

DIANA L. DURANT,                )
                                )
              Plaintiff,        )
                                )
v.                              )    Case No. CIV-13-539-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
              Defendant.        )
```

## OPINION AND ORDER

Plaintiff Diana L. Durant (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 11, 1964 and was 48 years old at the time of the ALJ's latest decision. Claimant completed her education through the tenth grade. Claimant has worked in the past as a hospital cleaner and daycare worker. Claimant alleges an inability to work beginning June 25, 2007 due to limitations resulting from a back injury, depression, anxiety, and diverticulosis.

### Procedural History

On April 21, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on November 3, 2009. The Appeals Council denied review and the decision was appealed to this Court. The decision was reversed and the case remanded on March 22, 2013.

On October 18, 2011, Claimant filed a second Title XVI application and on October 26, 2011, she filed a second Title II application. Both were again denied. On August 6, 2013, ALJ James Bentley conducted an administrative hearing in McAlester, Oklahoma. By decision dated October 23, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied review of the ALJ's decision on January 8, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of

4

light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper evaluation at step three of the sequential evaluation; (2) failing to properly evaluate the medical evidence; (3) failing to perform a proper credibility determination; and (4) failing to properly evaluate Claimant's limitations at step four and five.

## Step Three Evaluation

In his decision, the ALJ found Claimant suffered from the severe impairments of lumbar degenerative disc disease, obesity, cardiomyopathy, hypertension, dizziness, trigeminal neuralgia, major depressive disorder, generalized anxiety disorder, somatoform disorder, NOS, and dependent personality traits. (Tr. 774). The ALJ determined Claimant retained the RFC to perform less than a full range of light work. In so doing, the ALJ found Claimant was able to lift and carry 20 pounds occasionally and 10 pounds frequently. Claimant could stand and/or walk six hours in an eight hour workday and sit for six to eight hours in an eight hour workday. Claimant could only occasionally bend and stoop. She could not climb ropes, ladders, or scaffolds and could not reach overhead with the bilateral upper extremities. Claimant required a sit/stand option every half hour. She could perform simple tasks with routine

supervision. Claimant could have occasional contact with co-workers and supervisors, but must have no work-related contact with the general public. (Tr. 779).

After consulting with a vocational expert, the ALJ determined that Claimant could perform the representative jobs of garment sorter, electronics worker, and bakery worker, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 798). As a result, the ALJ determined Claimant was not under a disability from June 25, 2007 through the date of the decision. (Tr. 799).

Claimant contends the ALJ did not properly evaluate whether she met or equaled a listing at step three. Claimant was evaluated on two occasions for the administration of IQ tests. On June 26, 2008, Ms. Sally Phillips, a vocational rehabilitation specialist, administered the Beta III examination which "is designed to provide a measure of non-verbal general intellectual ability." Claimant's Beta IQ score was 64, which was within the extremely low range of 69 and below. (Tr. 518). However, Ms. Phillips questioned the validity of the scoring in light of the fact that Claimant needed no additional examiner assistance during the testing and was able to follow multi-step instructions without difficulty. A combination of Claimant's WRAT-4 scores, employment history, and successful completion of technology center training classes indicated to Ms.

Phillips that the IQ scoring may not be accurate. Id.

The second testing was administered by Dr. Denise LaGrand on February 14, 2012. She gave Claimant the Wechsler Adult Intelligence Scale - 4th edition and concluded Claimant had a full scale IQ of 56. Dr. LaGrand concluded Claimant's overall cognitive functioning was in the mentally retarded range. Her low processing speed index indicated Claimant would need more time to successfully complete tasks. Dr. LaGrand found Claimant appeared to be putting forth her best effort on the exam such that the results appeared to be a valid estimate of Claimant's overall functioning. (Tr. 1447).

The ALJ determined that "there is no objective evidence supporting the onset during the developmental period (before age 22) and no evidence of deficits in adaptive functioning necessary to meet or equal the requirements of deficits in adaptive functioning." (Tr. 777)(parenthetical information added by this Court). The ALJ found no objective measure of Claimant's IQ before age 22.

In an evaluation by Dr. Kathie Ward in June of 2008, she found it problematic as to whether Claimant's intellectual deficiency was as a result of a head injury Claimant sustained in a motor vehicle accident or was inherent but concluded the condition predated her work impairment. (Tr. 507). However, Dr. Ward also found Claimant presented with a fairly low level of cognitive functioning. Whether this condition was as a result of a developmental delay or effects

7

from the accident trauma, "it does not appear to hamper her ability to work as she has in the past." Id. While Claimant's school transcripts do indicate low grades, some As and Bs are also present. (Tr. 777, 1105). This evidence does not consistently show an inherent developmental deficiency before age 22.

Listing § 12.05 requires significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period – evidence that demonstrates or supports an onset of impairment before age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. While Claimant certainly experiences subaverage intellectual functioning, evidence of deficits in adaptive functioning which began before age 22 is not present in the record. Claimant must satisfy all of these required elements for a Listing to be met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Claimant has failed to meet all of the required elements.

**Treating Physician's Opinion Evidence**

On December 31, 2008, Claimant's treating physician, Dr. Vivek Khetpal completed a medical source statement. He determined Claimant could continuously lift/carry up to 10 pounds and occasionally lift/carry up to 20 pounds; could less than occasionally push and pull with the right arm; could less than occasionally bend, climb, balance, stoop, kneel, crouch, or crawl;

stand/walk up to 2 hours but less than 4 hours per work day; sit up to 2 hours but less than 4 hours per work day; require one 10 minute rest period per hour; and require rest to alleviate fatigue. (Tr. 673-74). In the narrative section of the statement, Dr. Khetpal states Claimant uses a cane to walk due to an unstable gait and back pain. (Tr. 674). He estimated Claimant's pain to be "moderate" and was severe enough to frequently interfere with Claimant's attention and concentration. Claimant would need to take unscheduled breaks and sit quietly. She will experience good days and bad days and need to be absent from work as a result of her impairments more than 4 days per month. (Tr. 675).

The ALJ gave Dr. Khetpal's opinion "little weight" because (1) treatment notes included no hand limitations but he included such limitations in his source statement; (2) the opinion was inconsistent with the consultative examiners' reports; (3) and the preparation of the statement was "hurried" as evidenced by Dr. Khetpal's failure to include limitations for the left hand. (Tr. 792). As acknowledged by the ALJ, Dr. Khetpal suspected Claimant suffered from carpal tunnel syndrome on the right. (Tr. 783, 1345). The ALJ's findings concerning Dr. Khetpal's "hurried" preparation of the statement represents unnecessary rank speculation.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is

9

entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons"

for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ did not provide the necessary analysis of Dr. Khetpal's opinion as required by Watkins. The medical record contains consistent evidence of some limitation caused by Claimant's hand condition. The longitudinal nature of Dr. Khepal's treatment of Claimant's condition entitles his opinion to deference. On remand, the ALJ shall re-evaluate Dr. Khetpal's opinion in light of the complete medical record and the requirements of Watkins.

Claimant was also evaluated by Dr. James R. Harrison on March 2, 2009. He concluded Claimant experienced a significant level of depression that interfered with cognitive and affective functioning. He found moderate limitations in the ability to understand, remember and carry out short and simple instructions; understand and remember detailed instructions; and the ability to interact appropriately

11

with supervisors; a marked limitation in the ability to carry out detailed instructions; make judgments on simple, work-related decisions; to interact appropriately with the public and co-workers; to respond appropriately to work pressures in a usual work setting; respond appropriately to changes in a routine work setting; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 657-58). The ALJ found fault in the testing performed by Dr. Harrison, found his opinion was inconsistent with "conservative mental health treatment", and inconsistent with Claimant's activities of daily living. (Tr. 793). Consequently, he gave the opinion "little weight." Id. This Court is somewhat at a loss as to how conservative treatment could reduce the validity of the testing performed by Dr. Harrison or adversely affect his findings from that testing. Further explanation is also necessary to assess the inconsistencies the ALJ found with Claimant's activities of daily living. On remand, the ALJ should further explain his reasoning in weighing Dr. Harrison's opinion.

Claimant finds fault in the briefing with the ALJ's evaluation of virtually every medical opinion in the record - and there are many. The ALJ is urged on remand to fully justify the weight afforded each such opinion, expressly and in detail explaining the

12

basis for rejecting or giving considerable weight to each.

### Credibility Determination

This Court has examined the ALJ's detailed findings on credibility and concludes that his bases for discounting her credibility to be well-supported by the medical record. The ALJ's findings as to credibility are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. This Court finds no error in the ALJ's credibility assessment.

### Step Four and Five Analyses

Since the ALJ is required to re-evaluate the medical source opinions, he shall reformulate his hypothetical questioning to the vocational expert to mirror his findings on these opinions and any modifications to the RFC determination which may result.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion

and Order.

    IT IS SO ORDERED this 30th day of September, 2015.

                                          _____
                                            KIMBERLY E. WEST
                                            UNITED STATES MAGISTRATE JUDGE